IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CHRISTOPHER S. HOBSON, )
)
          Petitioner, )
)
v. ) Case No. 16-CV-249-GKF-PJC
)
CARL BEAR, Warden, )
)
          Respondent. )

## OPINION AND ORDER

Before the Court is Christopher Hobson's 28 U.S.C. § 2254 habeas corpus petition. He challenges his Tulsa County District Court convictions for assaulting police officers with a deadly weapon, Case No. CF-2012-3081. Dkt. 1 at 1. For the reasons discussed below, the petition is denied.

**I. Background**

This case arises from a tense police standoff at a Tulsa café. Hobson entered the café on July 7, 2012 and announced he had no money. Dkt. 11-1 at 117-118. A cook offered to buy Hobson coffee and food. *Id.* After the cook entered the kitchen, Hobson started cutting the café's seats with a knife. *Id.* at 118. Police arrived and evacuated the building. *Id.* at 123. Hobson refused to drop the knife, which was tied to his wrist with string. *Id.* at 124. He was pacing around listening to something on MP3 player earbuds, which he periodically removed from his ears. *Id.* Hobson purportedly started gripping his face and clenching his hands, and officers believed he was "getting psyched up" to attack. *Id.* at 125. Police requested backup from officers with nonlethal equipment such as tasers, pepper-ball guns, and bean bag guns. *Id.* at 127.

The Tulsa Police Department dispatched a special operations team to the scene, who arrived with the nonlethal (or less lethal) equipment. Dkt. 11-1 at 128. According to Corporal Miller,

Hobson made numerous remarks about wanting to hurt the officers. *Id.* at 169. Hobson also stated his intention to "run at [the officers] and make [them] shoot him." *Id.* Sergeant Moudy similarly stated Hobson wished to be shot and killed with a shotgun, preferably in the chest or face. *Id.* at 192. Sergeant Moudy explained to Hobson they would only use nonlethal weapons if he attacked. *Id.* After about an hour, Hobson put his earbuds in, assumed a determined look on his face, and said something like "let's do this." *Id.* at 129-130; 172; 195. Multiple officers testified Hobson ran at them with the knife in an attack position. *Id.* The officers immobilized Hobson with a pepperball gun and taser. *Id.* They recall him gripping the knife as he fell to the ground. *Id.*

The State charged Hobson with: (Count I) assault with a dangerous weapon after nine prior convictions, OKLA. STAT. tit. 21, § 645; (Count II) obstructing an officer, OKLA. STAT. tit. 21 § 540; and (Count III) malicious injury to property, OKLA. STAT. tit. 21 § 1760. Dkt. 11-5 at 17. J. Brian Rayl was appointed to represent Hobson. Dkt. 3 at 13. He later retained Kathy Fry as trial counsel. *Id.*; *see also* Dkt. 10-4. His defense theory was that he lacked the requisite mens rea and only intended to commit "suicide by cop." The jury rejected this theory and convicted Hobson of all charges. Dkt. 11-2 at 61. The state court sentenced Hobson to a total term of 40 years imprisonment, in accordance with the jury's recommendation. Dkt. 11-4.

Hobson appealed the decision with the assistance of new counsel, Laura Arledge. Dkt. 10-1 at 1. He argued: (1) the evidence was insufficient to demonstrate he intended to assault the officers ("Ground 1"); and (2) the sentence is excessive ("Ground 2"). *Id.* at 2. By a Summary Opinion entered August 7, 2014, the Oklahoma Court of Criminal Appeals (OCCA) affirmed the conviction and sentence. Dkt. 10-3. Hobson then filed a post-conviction application raising ineffective assistance of trial and appellate counsel ("Ground 3"). Dkt. 10-4. The state court denied the application, and the OCCA again affirmed. Dkts. 10-7 at 10-11.

Hobson filed the instant § 2254 Petition on June 3, 2016. Dkt. 3. He raises the three grounds identified above. *Id.* Respondent filed an answer (Dkt. 10) along with copies of the state court record (Dkt. 11). Respondent concedes, and the Court finds, the Petition is timely and Hobson exhausted Grounds 1 and 2 by presenting them to the OCCA. Dkt. 10 at 2; *see also* 28 U.S.C. §§ 2244(d)(1) and (b)(1)(A). However, Respondent argues Ground 3 is procedurally barred and that the claims otherwise fail on the merits. Petitioner filed a reply (Dkt. 12), and the matter is fully briefed.

## II. Analysis

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of Hobson's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Before addressing the merits of [the] claim, [the petitioner] must show that he can satisfy [certain] procedural requirements." *U.S. v. Greer,* 881 F.3d 1241, 1245 (10th Cir. 2018). Those requirements generally include timeliness, exhaustion, and - at issue here - the absence of a procedural bar. *See* 28 U.S.C. §§ 2244(d)(1) and (b)(1)(A); *Fairchild v. Workman,* 579 F.3d 1134, 1141 (10th Cir. 2009). If the procedural requirements are satisfied or excused, the petitioner must then show the OCCA's adjudication of the claim: (1) "resulted in a decision that was contrary to ... clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[1] (2) "resulted in a decision that ... involved an unreasonable application of, clearly established Federal law," *id.*; or (3) "resulted in a decision that

---

[1] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings-the exclusive touchstone for clearly established federal law-must be construed narrowly and consist only of something akin to on-point holdings").

was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* § at 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (alterations in original) (quoting *Williams* v. Taylor, 529 U.S. 362, 405-6 (2006)). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 562 U.S. at 413). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless Petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state-court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

4

1. **Ground 1: Sufficiency of the Evidence**

Hobson first argues he was deprived of due process because the State's evidence is insufficient to support an assault conviction. Dkt. 3 at 10. He maintains he did not intend to hurt anyone and only wanted police to end his life. *Id.* The OCCA rejected this argument after determining "any rational finder of fact could have found the elements of the crime charged beyond a reasonable doubt." Dkt. 10-3 at 2.

Federal courts use the same legal standard. Under the Due Process Clause, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* The Court looks to state law to determine the substantive elements of the crime, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655.

The elements of assault-with-a-dangerous-weapon are set forth in OKLA. STAT. tit. 21, § 645. To obtain Hobson's conviction, the State had to prove: (1) an assault; (2) upon another person; (3) with a dangerous weapon; (4) without justification or excusable cause; and (5) with intent to do bodily harm. *See* OKLA. CRIM. JURY INSTRUCTION NO. 4-12; OKLA. STAT. tit. 21, § 645. At issue here is the fifth element, which requires "either direct or circumstantial evidence which might infer intent from the act done." *James v. State*, 599 P.2d 411, 412 (Okla. App. 1979).

After reviewing the record, the Court agrees any rational factfinder could have inferred Hobson intended to inflict harm. Several officers testified Hobson made comments about hurting them before running towards them with a knife. Dkt. 11-1 at 129-130, 169. There is nothing in the record to confirm he lacked the ability to appreciate his comments or the circumstances at the scene.

The evidence also negates Hobson's argument that he believed police would kill him before his knife made contact. Sergeant Moudy explained in detail to Petitioner why his "suicide by cop" plan would not work. Dkt. 11-1 at 192. Sergeant Moudy recalled Hobson asking specific questions about the pepperball and Taser, and that Hobson wanted officers to remove the nonlethal weapons from the scene. *Id.* Sergeant Moudy stated:

> Eventually I told him that we weren't going to [remove the nonlethal weapons] and the[y] were there to stop him if he did try to charge at us, if he did try to make us shoot him. And basically, I told him that if he charged at us, that we would use those, that it would hurt … [but] he would fail in his attempt to get us to shoot him with a shotgun.

*Id.* Hobson charged with a knife anyway, leading the jury to reasonably conclude he intended to harm police. The evidence clearly supports Hobson's assault conviction, and Ground 1 fails.

**2. Ground 2: Excessive Sentence**

Hobson next argues the state court imposed an excessive sentence under the circumstances of his case. Dkt. 3 at 7. Challenges to a state sentencing decision are generally not "constitutionally

6

cognizable" in habeas proceedings "unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). In other words, federal "review of a sentence ends once [the Habeas Court] determine[s] the sentence is within the limitation set by statute." *Id.* (citing *Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir. 1988)).

The OCCA found, and the Court agrees, that a 40-year sentence is within the statutory range of punishment and does not constitute "cruel and unusual punishment." Dkt. 10-3 at 2. For first-time offenders, assault-with-a-dangerous-weapon carries a maximum penalty of ten years imprisonment. *See* OKLA. STAT. tit. 21, § 645. However, Hobson committed nine prior felonies, including burglary, larceny, possession of stolen property, and bring contraband into a penal institution. Dkt. 11-5 at 123. His statutory penalty therefore ranged from 20 years to life imprisonment. *See* OKLA. STAT. tit. 21, § 51.1 (setting forth the range of punishment for offenders with two or more prior felonies). Petitioner's 40-year sentence is not excessive or cruel, considering his lengthy criminal history. Habeas relief is unavailable as to Ground 2.

**3. Ground 3: Ineffective Assistance of Counsel**

Hobson finally contends trial and appellate counsel rendered ineffective assistance. Dkt. 3 at 8. Specifically, Hobson asserts trial counsel:

(A) Improperly stipulated to a competency determination without cross-examining the forensic psychologist;

(B) Failed to call his mother or any other witnesses;

(C) Failed to play a recording of the incident for the jury;

(D) Provided faulty advice not to testify;

(E) Erroneously informed Hobson the charges included an "85% crime," which allegedly induced Hobson not to accept a plea agreement; and

(F) Failed to impeach the testimony of the café cook regarding his 911 call to police.

7

Dkt. 10-7 at 3. Construed liberally, the Petition also suggests appellate counsel should have raised these claims on appeal. Dkt. 3 at 8.

Hobson's arguments regarding trial counsel may be procedurally barred. However, he did exhaust the claims regarding appellate counsel in his post-conviction proceeding. The OCCA found: "[Hobson] simply hasn't shown that the outcome of his appeal would have …been different," had appellate counsel raised an ineffective assistance claim. Dkt. 10-11 at 2. Because the exhausted and unexhausted claims are all traceable to the same conduct - trial counsel's performance - the Court will overlook any procedural defects and address Ground 3 on the merits.

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend VI. To establish a deprivation of this right, a petitioner must demonstrate: (1) counsel's performance was deficient and (2) such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Under this test, the petitioner must show both that his 'counsel committed serious errors in light of 'prevailing professional norms' and that there is a 'reasonable probability' that the outcome would have been different had those errors not occurred." *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 694). *Strickland* applies to appellate counsel. *See United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995). When a habeas petitioner alleges appellate counsel failed to raise an issue on appeal, the Court "first examine[s] the merits of the omitted issue." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). "If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Id.* (quotations omitted). If the issue has merit, the Court must then determine whether counsel's failure to raise it "was deficient and prejudicial" under *Strickland. Id.*

Standing alone, the *Strickland* standard is "highly deferential." *Strickland*, 466 U.S. at 689. Coupled with § 2254(d)(1), this Court's review of the OCCA's ruling is "doubly deferential."

8

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (A "doubly deferential judicial review … applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."). "[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [this Court] defer[s] to the state court's determination that counsel's performance was not deficient and, further, … to the attorney's decision in how to best represent a client." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011).

*Ground (3)(A): Competency Evaluation*

Hobson contends "trial counsel stipulated to [Dr. Roberson's] evaluation of competency without any further inquiry." Dkt. 3 at 8. The record reflects Hobson's first attorney, J. Brian Rayl, filed an application to determine competency. Dkt. 10-13 at 1. According to Rayl, Hobson had irrational thoughts, a long history of mental illness, and was unable to focus on fact patterns. *Id.* Dr. Roberson performed the evaluation on or about September 13, 2012. Dkt. 10-13 at 2. He opined Hobson was likely malingering and "plainly state[d] his intentions to use mental health issues to influence the outcome of his pending legal charges." *Id.* at 8. Dr. Roberson further noted Hobson was deemed competent by a different doctor the previous year. *Id.* at 9.

Hobson complains his trial counsel, Kathy Fry, improperly stipulated to that evaluation. However, it is unclear what, if anything, she could have done differently in the face of two recent unfavorable evaluations. Moreover, the Tenth Circuit has held that counsel's "decision not to further investigate and pursue [a defendant's] mental health issues [i]s reasonable" where a psychiatrist finds the defendant competent to stand trial. *Lucero v. Medina,* 535 Fed. App'x 769, 770 (10th Cir. 2013); *see also U.S. v. Cornejo-Sandoval,* 564 F.3d 1225, 1235 (10th Cir. 2009) (District courts may forego a competency hearing based on a psychological evaluation). Fry's refusal to call Dr. Roberson as a witness also appears to be a tactical decision. If she cross-examined Roberson, it could highlight the damaging portions of his report and negate Hobson's

mens rea defense. Tactical decisions are virtually non-reviewable, and in any event, this decision was reasonable. *See Strickland,* 466 U.S. at 689. No relief is available based on competency issues.

*Grounds 3(B) and 3(F): Failure to Call and/or Impeach Witnesses*

Hobson next argues Fry should have: (1) called his mother as a defense witness; and (2) impeached the café cook regarding the 911 call to police. Dkt. 10-4 at 13. He also complains more generally that the jury only heard from State witnesses. *Id.*

"[S]peculative assertions" regarding the failure to call or question witnesses are "insufficient to carry [the] burden of proving prejudice" under *Strickland*. *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008). To obtain relief, the petitioner must "show how the [omitted] testimony—even if favorable to him—would have changed the outcome of his case." *Id.* Hobson's mother was not at the scene, and the Court is not convinced her testimony about his mental health issues could have undermined the competency determination. It is equally unclear what impact, if any, Fry could have made by impeaching the café cook about his recorded 911 call. The cook testified he called 911 after Hobson pulled a knife and starting cutting the café's seats. Dkt. 11-1 at 118-119. The trial exhibits confirm the seats had knife marks. Dkt. 11-3 at 7. Consequently, Hobson has not shown counsel was ineffective regarding witness testimony.

*Ground 3(C): Failure to Play Recording*

Hobson argues Fry should have played the video of the café standoff. Dkt. 10-9 at 12. He believes the jury would have rendered a different verdict, had they observed his demeanor. *Id.* Hobson also refers to Fry's vision impediment, arguing: "[p]erhaps … a blind lady was blind to the fact of the recording." *Id.* Once again, Hobson fails to demonstrate error or prejudice under *Strickland*. The facts surrounding the standoff were well established. Several officers also described Hobson's demeanor in detail, including his comments, facial expressions, and mental state. Dkt. 11-1 at 129-130; 171. Moreover, it is easy to imagine why seeing Hobson charge

officers with a knife could prejudice jurors. Fry's decision not to show the video was reasonable; there is no evidence of prejudice; and Ground(3)(C) fails.

*Ground 3(D): Advice Not to Testify*

Hobson also complains he did not have an opportunity to testify at trial. Dkt. 10-9 at 12. The record indicates Hobson made that decision. The state court engaged in the following colloquy with Hobson and counsel:

COURT: And I think you wanted to make a record …

FRY: Yes

COURT: Make a record with Mr. Hobson because it's my understanding that it is his choice not to testify. And Mr. Hobson, you realize that that is your choice. She can advise you one way or another, but it's ultimately your decision. You can testify if you want to, but of course, you have the right not to testify. And you understand that, sir?

HOBSON: Yes, sir, and I don't want to.

Dkt. 11-1 at 218.

To the extent Hobson contends Fry gave faulty advice not to testify, relief is still unavailable. The Tenth Circuit has rejected such arguments where: (1) the advice likely prevented damaging cross-examination; and (2) the defendant's testimony would not have overcome the strong evidence of guilt. *See Cummings v. Sirmons*, 506 F.3d 1211, 1230 (10th Cir. 2007). Both elements are met. Hobson admitted to the State psychologist his intentions to use his mental issues to influence the outcome of the charges against him. Dkt. 10-13 at 8. It was reasonable to believe he would give damaging testimony on cross-examination. Further, any self-serving testimony regarding his "suicide by cop" theory would not have overcome the strong evidence of guilt. As discussed above, the officers made it clear they would use nonlethal weapons, and he nevertheless elected to charge them with a knife. *See* Supra, Section 1. Hobson has therefore not established a *Strickland* violation as to Ground 3(D).

*Ground 3(E): Advice Regarding the Plea*

Hobson finally contends trial counsel erroneously advised him he must serve 85% percent of the assault sentence before becoming eligible for parole. Dkt. 10-4 at 14. According to Hobson, he would have accepted a plea agreement but for his belief that assault-with-a-dangerous-weapon is an "85% crime." *Id.*

The Tenth Circuit has held the failure to inform a defendant of the 85% Rule does not implicate the Sixth Amendment. *See Chrisman v. Mullins*, 213 Fed. App'x 683, 687 (10th Cir. 2007).[2] Moreover, Hobson has not demonstrated "a reasonable probability he would have pleaded guilty" if counsel correctly advised him on the 85% Rule. *United States v. Watson*, 766 F.3d 1219, 1226 (10th Cir. 2014). In fact, the record suggests he was determined not to take a plea deal. Hobson initially rejected an offer of 20 years imprisonment (the minimum sentence). Dkt. 11-1 at 4. He later rejected an offer of 25 years, which was available up to the start of trial. *Id.* The state court even went on the record to confirm Hobson did not have any questions about "the offer … and the possible consequences" before bringing in the jury. *Id.* Hobson could have asked questions, if the 85% Rule was really the sticking point in plea negotiations. Instead, he maintained his innocence at trial, on appeal, in the post-conviction proceeding, and in the instant § 2254 Petition. Dkt. 3 at 14. Relief is therefore unavailable as to Ground 3(E).

In sum, Hobson has not demonstrated any counsel was deficient, or that any error caused prejudice under *Strickland*. Because Hobson's conviction and sentence do not otherwise violate federal law, the Court must deny the Petition. *See* 28 U.S.C. § 2254.

---

[2] The continuing applicability of *Chrisman* is unclear in light of *Padilla v. Kentucky*, 559 U.S. 356, (2010). *Padilla* held the failure to advise a defendant about the collateral consequences of a guilty plea (there, deportation) constituted deficient performance. However, *Chrisman* has not been overruled, and in any event, Hobson's *Strickland* claim fails on both prongs.

### III. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] … issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, the Court rejects the merits of the constitutional claims, the petitioner must demonstrate "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons above, the Court finds reasonable jurists would not debate the evidence supported the conviction and Hobson received a lawful sentence. It is also beyond debate that, under *Strickland*, Hobson received effective assistance at trial and on appeal. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. The petition for a writ of habeas corpus (Dkt 3) is **denied**.

2. A certificate of appealability is **denied**.

3. A separate Judgment will be entered disposing of the case.

**ENTERED** this 20th day of September 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE